National Elevator. This is Bernard McLaughlin. Good morning. If I could please support Stephen Kessler on behalf of defendant appellant Bernard McLaughlin. I reserve two minutes for rebuttal. Okay. ERISA does not permit money judgments. The December 18, 2015 order was a money judgment against him personally. The judge did not have the authority to answer it. But the action here, the complaint that was filed, is clearly a complaint for equitable relief under ERISA. How did anything that happened thereafter change that? Well, then the complaint was for equitable relief under ERISA. The judgment that was entered was not. The original judgment was equitable lien. Yes, it was. The original judgment was equitable lien. I took an appeal from that, and I lost that. And there was no dispute in that appeal as to what amount of money was at stake? The... I agree with that judgment. The original judgment was for equitable restitution. It was restitution. It did not impose the lien. It certainly didn't adjudicate the amount of the lien. It says it's an action for the imposition of a constructive trust under equitable lien over identifiable funds, and says it's not an action for a money judgment. Okay. But the relief governed by ERISA is the order that's entered by the court at the end of the case. No, but you had to monetize the lien at some point. If you don't monetize the lien, how do you go after a firm loan lien? It's out there somehow, but what does it mean? You certainly have to monetize the lien. Okay. But the lien has to be against a specific fund. Well, not under FUNC. I mean, FUNC was the law then, and clearly under FUNC it didn't have to be. Well, it couldn't be against somebody personally. The second order enters a personal money judgment against Bernie McLaughlin. That's not something the court ever had the authority to do under ERISA. It's a word for damages. It makes him personally liable, not out of a fund. Are you saying that FUNC was wrong? At the time it was decided, are you saying FUNC was wrong? I'm sorry? At the time FUNC was decided, are you saying that it was wrong? Yes, it was. Well, it was wrong now after Montanito, but it wasn't wrong until Montanito said it was wrong. FUNC also wouldn't have controlled this anyway necessarily because FUNC did not enter a money judgment against the defendant personally and allowed a set-off. But that's what happened here. We have a personal money judgment against. But FUNC makes clear, and I happen to disagree with it, but it makes clear that you can go after any and all assets of the defendant, the debtor, regardless of whether those assets have been dissipated. Isn't that right? Isn't that the point of Montanito reversing FUNC? Well, I think that FUNC was a bit more limited because it addressed only the Social Security and stability assets. But, yes, it can be construed that broadly. I mean, the thing I never quite could grasp about that is when I think lien, I think that attaches to a res, right? You have to have a res. Of course it does. But we're not in that world because we're in a pre-Montanito world and trying to ascertain whether Judge Thompson made the right call based on what she knew at the time she made it, and Montanito had not yet been decided. But FUNC came out after Great Western Life was decided, after the earlier cases that all talked about equitable relief only, and there had to be some finding that what the judge did was granting equitable relief. The second order, the December 19th… You're okay with the first order, then? Your argument is, look, ERISA says no money judgments, and what that means is you can't enter a judgment for equitable lien and then use the auspices of Rule 60 to somehow convert that to a money judgment. Money judgments are and always have been precluded by ERISA. That's my position on appeal. I'm not okay with the first order because I think that, in effect, Judge Thompson entered contractual restitution as opposed to equitable restitution by a little step point. Okay? So I'm not going to argue it here. That's why I petition for certification on that issue. But we're not dealing with the January 24th, 2014 order anymore. We're dealing with the December 18th, 2015 order. All right. And for that to be valid under Rule 60, that has to be just a mechanical adjustment, right? It really was not. Well, why isn't it? If the amount was in dispute, I think you'd be on a better footing there. My understanding of reviewing the prior appeal is that it was never disputed as to what the number was. And if the number was agreed upon, why isn't that just a mechanical change? There was no number ever agreed upon. It was not in dispute in the prior appeal because the order and the proof submitted by the plan never brought a specific amount to the judge's attention to be adjudicated. I thought after our decision that the – maybe I'm wrong. After our decision affirming some agreement, I thought the 47,000 rental was – I thought that would be not contested. That was an hour amount. But where was it contested? Regardless of whether there were proofs, where was that number contested? The first time that amount was ever presented to the district court was when they sent a letter into the court with a printout attached on December 18th, 2015. That printout and no amount was ever mentioned to the district court before they sought to reopen the issue. I immediately wrote a letter to the court saying, no, we don't think this is the correct lien because they had sent us letters on prior occasions asserting a lower amount for the lien, I think 37,000. That was one of the initial objections I raised to what they did. And in my motion for reconsideration, I did raise the issue of the amount of a lien. The amount of a lien was never an issue until we sought to reopen this matter a year after the – We said that number was not in dispute. So you're just saying that that panel was incorrect in saying that that amount was not in dispute. I don't know where the panel would have gotten that number. It was never in the record. It was never in the district court's opinion. It's not in any of the appendices. That's what we have to work with. There was some references in letters. You may have seen the correspondence back and forth between me and the plan, and it was written that various items were referenced in those letters, but then one number was referenced. But it was never such a good proof. Did you say, and I'm forgetting, when the court entered this order on the Monday after the letter, did you say we dispute the amount? Yes. I say we dispute the amount, and also in my – What is your dispute with the amount? They have sent us prior letters asserting a lien of, in the 30s, I think it was 37,000, as opposed to the 47,000 there. I have a feeling that they added amounts that occurred after the liability case was settled, or which had moved into process in time for the liability case to settle, and, of course, that would extinguish the lien, because the lien is fixed when the liability case is settled. But it was never a – I believe in the first paragraph of our opinion. Facts in this case are undisputed. In broad summary, then, there's a few sentences. The plaintiff paid approximately $47,580.24 in medical benefits on his behalf. McLaughlin filed a personal injury claim against the party. On December 2, 2011, the case settled. That is what we have to work with. That's in our prior opinion. I understand that. I understand that. And you're saying you have set offs. Is that why that number was never set off? Because – All right, but did you file a complaint in New Jersey on the set offs? It's currently pending. It's currently pending. Okay, so then – Okay. Then you might get some money back in that case if we rule against you here. Right. But that doesn't alter the number that Chief Judge McKee just read. Well, that number was never the subject of a judicial finding. It was something that – It was never the subject of a judicial finding. The facts are undisputed. It was never the subject of a fact finding by the district court. The number was never submitted in the proofs to the district court. The first time I saw that printout in any document attached to a pleading was when they sent the letter in to your – Okay, but you're asking us to basically say that even though we said – well, we, even the panel here said it's not presidential. The facts are undisputed. You're asking us to conclude, even though the prior panel was wrong, that we cannot rely upon the figure that you put in your opinion, colleagues, because now we're being told, take this window of Greenway and Berry, that the facts and the amount was disputed. I'm not sure we can do that. I'm asking that you not make Bernie and McLaughlin for survival for any amount of money. Well, certainly. It's certainly an issue. That's different than the value of the judgment. That gets to the point which is you're saying no money judgments under ERISA. Right. Irrespective of whether it's $1 or $100,000. Let me just note, you also said in your brief filed in opposition to the motion for summary judgment that you note, it says, because there's no need to await issuance of a decree, the holder of an equitable lien by agreement may stand in a better position. Because the amount of the lien is agreed to, the amount need not be determined at a separate hearing. I'm citing McCushion's injury statement. And it seems to me that you're taking the position that a lien by agreement isn't subject to dispute. The lien that was agreed to is they have a lien for all the medical expenses they paid. That amount is never judicially determined. There's no doubt they have a lien for, they would have had a lien against a qualified fund for any money they did pay for the, on behalf of Bernie and McLaughlin. So you would like us to open this up and say, Judge Thompson, have a hearing as to the amount? I think, I'm asking that you, it would be nice. I mean, I don't think you have to go that far. I think you simply have to, all I'm asking that you do is believe Bernie McLaughlin of his personal liability for the lien. But there is really something wrong here also, in that there is an agreement that this money was supposed to go back over to the plan, and the plan paid it. Are you, I mean, you've fought this tooth and nail. Are you really saying he doesn't owe this obligation? No, he only owes it if he got the money back from the tortfeasor. He never did. That's the I thought you got a settlement from the tortfeasor. So the plan, interestingly, the plan doesn't even say that he has to reimburse only medical expenses. It doesn't matter how it's collected. Well, that's what they say, but that's contrary to the idea of equitable restitution. Well, the problem is, though, it looks like you're not suggesting this is what happened. Maybe I'm suggesting this is what happened. Maybe it's what happened. Your client structured the settlement specifically to avoid having to, quote, honor, close quote, the obligation under his agreement with the plan. I am under no obligation under ERISA to include medical expenses in my claim on behalf of Bernie McLaughlin. Under state law, I can't even recover them, aside from the preemption issue. The claim's remedy, if they basically made a gift to Bernie McLaughlin, was All right, but that's good lawyering. I'm not going to, you know, criticize good lawyering. If you can help protect your client's assets, that's fine. But the fact remains that, in this case, the terms of the plan allowed the board to recover from McLaughlin, regardless of how he characterized the settlement. You could, you know, move heaven and earth, call it whatever you want. But it doesn't help you under the terms of this plan. And the terms of the plan that say that are contrary to the idea of equitable restitution, they're asking for a remedy. So you want us to ignore the terms of the plan? To the extent they ask for a contract remedy as opposed to an equitable remedy, yes, you're required to. What case supports that? What case supports reading this anyway, other than the way it's read? In fact, the case law repeatedly says this is the way it should go. No, not since it's very clearly their remedies are limited to equitable restitution. What transforms this from equitable restitution into legal restitution? Are you saying because there's no identifiable fund that's there, it therefore must be legal in that effort? It's legal restitution because the only basis for the claim is by looking at what's in the plan as opposed to looking at the nature of what my client recovered. For equitable restitution, I have to have something that – If there's a fund, an identifiable fund. No, no, no. That's the only issue, not the restitution issue. For equitable restitution, I have to have something that unjustly enriches me and belongs to be conscious to them. If I don't have that, I have nothing to give for an unequitable restitution claim. Why doesn't that arise from what was just read to you about this? It flows from a legal obligation, a contractual obligation. But if that was flows from a legal obligation, why wouldn't equity impress something in the nature of a trust upon the recoverer? Because they can't point to anything beside the plan language or giving the right to the money. The only thing you're questioning is what the plan says. That's not in the proper integration. But under U.S. Airways v. McCutcheon, the agreement provides a measure of equities. It provides a measure of equities, not the existence. A knowledgeable situation would be a plaintiff in a breach of contract action who has a litigated damages clause but who had no real damages. I won't say where we think the equities might lie here. A lot of it depends on how you characterize what happened here, how you characterize whether it's a monetizing of the lien or a personal judgment. Yes, it does. And that's a very difficult issue for us to decide. It looks like she's monetizing the lien because they're saying, here we come, pursuant to this, this is the amount. The difference is that in the earlier order, if they took it to a clerk of law to docket it as a personal judgment against Bernie McLaughlin, they couldn't do it. In the second order, they can do that. It becomes a personal judgment. It can be docketed. That's what Funk says. You don't have to have the same property. You can get it out of his assets. But you can't get it from him personally. When you docket it, they can execute upon it. Personally? I would think so. The problem is they can't do that because it's not a good lien. And to the extent that Funk said he could get it out of his personal assets, Funk was overruled by... But we can't apply Montaniel at this point. You don't have to. You can apply Great West Life and you can apply the cases that came before Montaniel. Montaniel was the controlling law. I mean, Funk was the controlling law. It was in the circuit, but it was contrary to... That's where we are. But Funk was contrary to... What? Okay, I have a red light now, so... Okay. Thank you. Mr. Gould? Thank you, Your Honor. John Gould. I'm here for the Board of Trustees for the National Elevator Industry Health Benefit Plan. And this case to me is... We're talking about some pretty complicated issues. But it all comes down to really a simple question. And that is when Judge Thompson entered in her original order on January 24, 2014, did she intend for the plan to be able to recover the money that it paid? Because we know that there was a mistake made on the judgment. What was listed was a proposed summary judgment that would have been listed like on a defense claim where it merely said summary judgment is granted to the plaintiff in the case. Well, I don't know whether it's the original intent or whether it's what happened when the letter was sent and an actual judgment was entered. I mean, one thing going against your side of the argument is that that letter that was sent asked for a judgment in a certain amount, never referred to an equitable lien, never referred to Rule 60. And what she said was recover this dollar amount and enter a personal judgment. I mean, I think that's where you have an issue. And how should we characterize that? I think that's the issue. What would help us characterize it in your way, that is, that this was merely a lien by agreement rather than a personal judgment? Well, the complaint listed, as you mentioned before, Judge Rendell, the complaint only asked for an equitable lien by agreement. That's what the judgment would have been issued at the time. And that's what you got with the first order. You got the court saying, yes, you're entitled to this lien by agreement. Well, we had the opinion, but the judgment that was issued didn't specify anything. It didn't specify the amount of the lien. It simply said summary judgment is granted to the plaintiff in the case. Right. But my point is if you then later had filed asking for a hearing as to the amount of the equitable lien or the amount of the lien by agreement and maybe had a hearing on it, that might have been easier. And then she enters an equitable lien amount, that would have been cleaner and more apparent. Absolutely. That would have been more artful. Of course, at the time, there was an appeal going on on the original judgment for the arguments that were made. There was a petition for certiorari that came later. And then it was at the time after settlement talks broke down that we realized, okay, we're going to have to figure out how to enforce this. And that's the time that we went back to the court and said, Judge, there was a mis- What happened is the original judgment did not list the amount that we need in the sum certain, so can you please enter a judgment that does. I assume the judge relied upon the catch-all provision. Rule 60, you didn't specify what provision you were asking for a lien from. We did not specify that, no. And, of course, Rule 60 allows the judge to the discretion to correct an error in a judgment like that. But there was no error here. It was something that needed to be left to be done. And quite frankly, it seems to me it probably should have been done on notice and opportunity for answer. And there's no reference to Rule 60 in either your submission or her order. That's correct. It is not mentioned. Of course, Moore's federal practice allows, you know, specifies when it talks about Rule 60A specifically that it's not just limited to correct, you know, clerical errors and that type of error, but it's allowed that a district judge has the discretion to invoke Rule 60 to resolve any ambiguity in the order to more clearly reflect contemporaneous intent or to ensure that the court's purpose was fully implemented. Yeah, I'm just not sure that the $70 amount fits into that category, especially if it is disputed. Do you agree, do you not, that ERISA does not allow for personal money judgments? As after the Supreme Court in Montanil has ruled, I think that equitable liens are limited to specific funds or assets traceable to those funds. My question was you would agree, would you not, that ERISA does not allow for personal money judgments? It does not. It's not a trick question. Does ERISA allow for personal money judgments or not? In certain situations, it does, Your Honor, and I'm not trying to be difficult. I'm trying to answer the question. In situations like, in cases like this, it does? In cases where there is an equitable lien by agreement, you know, now it no longer does. But there are things like accounting for profit. There are other things. What does that have to do with this? How does this case involve accounting for profit? Those are just types of relief that would be available under 50283 of ERISA. Which is not implicated here. 50283 is the mechanism, the appropriate equitable relief that we're seeking to enforce the equitable lien. I'm not asking about equitable relief. I'm asking about a personal money judgment. Let me ask it a different way. In this case, could the plan have sued Bernard McLaughlin and had a prayer for relief that said that the plan hereby demands a judgment against Bernard McLaughlin in the amount of $47,000? Could you have done that? No. All right. Then how is it proper that you can go to a judge and say, we ask for an equitable lien against Bernard McLaughlin, and then turn around a short time later and then convert that equitable lien into the very same personal money judgment, which exposes his assets wherever they may be found to execution, when you couldn't do that in the first instance? The argument was at the time, and what was accepted not just by this circuit in Funk, but also five other circuits at the time, was that when you had an equitable lien by agreement over property, and that property was then dissipated so that it no longer existed, that the court's inequity had the power to issue alternative compensation, even through judgment. Okay. So as I understand your argument, your argument is that you can't just pursue a money judgment in the first instance in a case like this, but what you can do is when you're getting the runaround in attempting to execute on your equitable lien, then the court retains the equitable powers to help you collect on your equitable lien. That is correct. And the question that was answered in Montanil is when the courts were doing that, were they exercising a form of equitable power that they had, or were they exercising a legal relief under a clean-up doctrine? Right. Unfortunately for my client, the Supreme Court came down on the idea that they were exercising the clean-up doctrine, and that was not equitable relief. But at the time that it existed when we got the original judgment, that was something that was available. Okay. Okay, thank you. I assume that you're getting your green lights on. Yeah, it's green lights on, but if there's no other questions, I'm good. Okay. Unless there's a question for anyone else. Yeah, I appreciate it. Could we just see counsel for a second? Can you help me finish?